UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**KRISTEN A. BINDER,**

                                **Plaintiff,**

                      **-v-**                            **5:15-CV-738 (NAM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Howard D. Olinsky, Esq.
Olinsky Law Group
300 State Street
Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Joshua L. Kershner, Esq.
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On September 4, 2012, plaintiff protectively filed an application for disability insurance benefits, alleging an onset date of June 4, 2011. The application was initially denied on November 9, 2012. Thereafter, plaintiff filed a request for a hearing, and a hearing was held on November 12, 2013 where both plaintiff, and vocational expert Amy Kutschbach testified. On February 5, 2014, ALJ Jennifer Gale Smith issued a decision denying plaintiff's claim for

benefits. (Tr. 20-31). The Appeals Council denied plaintiff's request for review. Plaintiff brought an action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits.

Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 22). For the reasons set forth below, the court concludes that the Commissioner's decision should be affirmed.

## DISCUSSION

### A. Legal Standard

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

First the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date.  (Tr. 22).  The ALJ then concluded that plaintiff had the following severe impairments: status post left knee surgery, mild spastic cerebral palsy, asthma, degenerative disc disease of the lumbar spine, decompensation due to lack of activity and exercise, borderline intellectual functioning, a learning disability and a depressive disorder.  (Tr. 22-23).  Specifically addressing Listings 1.02, 1.04, 11.07, 12.04, and 12.05 the ALJ determined that plaintiff's impairments did not meet the requirements of the listings.  (Tr. 23-26).

Next, the ALJ discussed the evidence and found that plaintiff had "the residual functional capacity to perform sedentary work . . . except she should avoid concentrated exposure to dust, odors, fumes, gases, extreme heat and extreme cold.  She should never climb ladders, ropes or scaffolds, kneel or crawl . . . [and she] can occasionally climb stairs, balance and stoop."  (Tr. 26).  The ALJ further found that plaintiff was limited to "simple routine and repetitive tasks and these should be limited to one or two steps."  (Tr. 26).

The ALJ stated that she based this RFC determination on the opinions of Kalyani Ganesh, M.D. who performed consultative examinations assessing plaintiff's physical limitations; Michael Boucher, Ph.D, who performed a psychological evaluation on February 20, 2008; and E. Kamin,

state agency psychological consultant. (Tr. 27). The ALJ explained that Dr. Ganesh first opined that plaintiff had no limitation to sitting or use of the upper extremities and a moderate limitation to standing, walking, and climbing; and later opined that she had no limitation to sitting, standing, and use of the upper extremities and a mild to moderate limitation for walking and climbing. These limitations were based on Dr. Ganesh's examinations of plaintiff, and the ALJ found that they were consistent with the other evidence in the record, including the findings of Dr. Aziz, the neurologist. (Tr. 27). With respect to Dr. Boucher's evaluation, the ALJ noted that he found a verbal IQ score of 83, a performance IQ score of 75, and a full-scale IQ score of 78, and stated that plaintiff did not meet the objective criteria for a formal diagnosis of a learning disability in any area other than mathematical calculations. (Tr. 27). The ALJ further pointed out Dr. Boucher's statement that plaintiff is "much more effective doing tasks that are more step-by-step routine, and in line with her practical experience," noting that this was consistent with her RFC determination that plaintiff be limited to simple routine and repetitive tasks that are limited to one to two steps. (Tr. 27). The ALJ concluded that Dr. Boucher's opinion was based on an extensive evaluation and was supported by the evidence or record, including statements from plaintiff's neurologist that she volunteers, is independent in her daily living activities, has no trouble with speech or memory, and has no difficulty with reading, writing, comprehension or expression. Consultant Kamin did not examine plaintiff, but concluded, based on the record, that plaintiff was able to perform unskilled work, which the ALJ found consistent with the opinion of Dr. Boucher. (Tr. 27-28).

The ALJ gave limited weight to the opinion of Margaret Sennett, M.D., plaintiff's treating physician. (Tr. 29). Dr. Sennett completed Medical Source Statements with respect to both

-4-

plaintiff's physical and mental limitations. Dr. Sennett opined that plaintiff was "very limited" in her ability to walk, stand, lift, carry, push, pull, bend, use stairs and climb; and also opined that plaintiff could only sit for thirty minutes at a time and four hours in an eight-hour workday and stand for twenty minutes at a time and two hours in an eight-hour workday. Dr. Sennett concluded that plaintiff could not maintain attention for a two-hour segment, make simple, work-related decisions, complete a normal workday and workweek or interact appropriately with the general public. The ALJ concluded that these opinions were inconsistent with the objective evidence of record. For example, with respect to plaintiff's physical limitations, the ALJ noted that given that plaintiff's primary impairments are her knee and cerebral palsy, there is no reason why plaintiff would not be able to sit and Dr. Sennett provided no reason why she would be unable to sit for more than four hours in an eight-hour workday. The ALJ also observed that Dr. Sennett's mental opinion was inconsistent with Dr. Boucher's opinion, discussed above, and with consultative psychologist Caldwell's findings that plaintiff only had a moderate limitation with attention, concentration and memory, and was cooperative with an adequate manner of relating, social skills and overall presentation. (Tr. 29).

Finally, the ALJ gave consultative examiner psychologist Caldwell's opinion limited weight. Dr. Caldwell opined that plaintiff was limited in her ability to perform simple tasks independently, maintain attention/concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently and appropriately deal with stress. The ALJ noted that with the exception of complex steps (which the RFC determination did not require), plaintiff demonstrated an ability to perform all of these functions through her volunteer work at the YMCA. (Tr. 29)

-5-

The ALJ also discussed plaintiff's allegations regarding her limitations, but found her statements concerning the intensity, persistence and limiting effects of the symptoms not entirely credible. The ALJ also noted that plaintiff's credibility was weakened by her work history and earnings record. (Tr. 28).

The ALJ then found that plaintiff had no past relevant work. (Tr. 29). After consulting a vocational expert because plaintiff was unable to perform the full range of sedentary work, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore a finding of "not disabled" was appropriate. (Tr. 31).

### C. Issues In Contention

Plaintiff argues that: (1) the RFC determination is unsupported by substantial evidence due to the ALJ's failure to properly weigh the opinion evidence; (2) the credibility determination is unsupported by substantial evidence; (3) the Step 5 determination is unsupported by substantial evidence.

#### 1. RFC Determination/Opinion Evidence

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining

RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

Plaintiff focuses on the ALJ's reliance on Dr. Boucher's 2008 evaluation, which she believes was error because it was performed prior to the onset date. Plaintiff states that courts have held that such an opinion provided prior to the alleged onset date is irrelevant to the

plaintiff's application. (Pl. Br. at 17). Defendant, on the other hand, argues that there is no support for plaintiff's argument in the rules and regulations promulgated by the Commissioner, or in case law in the Second Circuit. It is true that courts have found opinions provided before the onset date to be irrelevant in certain situations. *See, e.g., Velez v. Colvin*, No. 3:13-CV-171, 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016) ("'[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability'") (citing *Carway v. Colvin*, No. 13 Civ. 2431, 2104 WL 1998238, at *5 (S.D.N.Y. May 14, 2014)). However, this Court does not conclude that *every* opinion provided before an alleged onset date is irrelevant, nor does it believe that Dr. Boucher's opinion is. *See, e.g., Mills v. Astrue*, No. 5:11-CV-955, 2012 WL 6681685, at *2 (N.D.N.Y. Dec. 21, 2012) ("Notably, medical records which predate the claimant's alleged onset date can 'prove relevant to a claimant's later condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period.'") (citing *Baggett v. Astrue*, No. 5:11-CV-195, 2012 WL 2814369, at * 8-9 (N.D.N.Y. June 13, 2012)).

As the Commissioner points out, Dr. Boucher's evaluation consists largely of IQ testing. Plaintiff's scores on this IQ testing are similar to the scores she received on IQ testing provided in 11th grade[1] Plaintiff has pointed to no evidence, or any reason that the Court should believe that her IQ has changed significantly since 2008.[2] Indeed, "it is reasonable to presume, in the absence

---

[1] On the previous WAIS-III testing, plaintiff received a verbal score of 86, a performance score of 76 and a full scale IQ score of 79. (Tr. 302). In the 2008 tests, plaintiff received a 83, 75, and 78 respectively. (Tr. 303).

[2] In her decision, the ALJ noted that plaintiff's attorney "argued that the IQ testing in the record is not recent" and requested a fourth consultative examination. The ALJ stated that "there is no reason to believe that the IQ scores from February 2008 are not a reliable measure of the

-8-

of evidence indicating otherwise, that claimants will experience a 'fairly constant IQ throughout [their] li[ves].'" *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012) (citation omitted). In light of the fact that Dr. Boucher's evaluation consisted largely of IQ testing, and there is no indication that plaintiff's learning disability or intellectual functioning has changed, the Court concludes that the evaluation is relevant despite the fact that it was performed prior to the alleged onset date.

Plaintiff also states that her depression worsened with her cerebral palsy diagnosis, and that for this reason, the 2008 opinion is not relevant. (Pl. Br. at 18 (stating that the opinion "could not possibly have taken into account the mental and emotional toll that these impairments would have on Plaintiff's psychological functioning . . . .")). However, as noted above, there is no indication that plaintiff's IQ has changed–and this was the focus of Dr. Boucher's 2008 evaluation. Indeed, the record does not demonstrate that plaintiff's mental impairments are based on her depression, instead, they appear to be primarily a result of her learning disability and borderline intellectual functioning, both of which were adequately addressed in Dr. Boucher's 2008 opinion. Moreover, the restrictions upon which plaintiff asks the Court to rely–those of Dr. Sennett, also appear to be based on these impairments, not her depression. Consequently, the Court concludes that the ALJ did not err by relying on Dr. Boucher's opinion.

Plaintiff also argues that the ALJ should have afforded the opinions of Dr. Sennett and Dr. Caldwell greater weight. Regarding plaintiff's mental limitations, Dr. Sennett opined that she is "very limited" in ability to function in a work setting at a consistent pace, "moderately limited" in ability to understand and remember instructions, carry out instructions, and maintain attention and

---

claimant's current functioning. In fact, aside from mere speculation, the claimant's attorney offered the undersigned no reason to believe that these scores are not entirely accurate." The ALJ therefore denied the request for a fourth consultative exam. (Tr. 26).

concentration. A year later she opined that plaintiff is "unable to meet competitive standards" regarding the ability to: maintain attention for two hour segments; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; and interact appropriately with the general public. At the same time she opined plaintiff is "seriously limited" in her ability to: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; travel in unfamiliar places; and use public transportation.

Plaintiff first contends that the ALJ's decision to accord this opinion little weight based on it being unsupported by the record, specifically Dr. Boucher's opinion, is improper based on her argument discussed above that Dr. Boucher's opinion should not have been relied upon. However, as explained above, the Court concludes that the ALJ did not err by relying on Dr. Boucher's opinion. Consequently, the ALJ was free to conclude that Dr. Sennett's opinion was not consistent with the record, including Dr. Boucher's evaluation.

Plaintiff also argues that the ALJ did not properly weigh Dr. Sennett's opinion because she did not specifically mention the lengthy treatment relationship. However, the Court concludes that the ALJ's decision adequately explains her reasons for according Dr. Sennett's

opinion regarding plaintiff's mental impairments little weight.[3] In addition to the opinion of Dr. Boucher, the ALJ relied on the opinion of State agency psychological consultant Dr. Kamin. Dr. Kamin opined that despite her limitations, plaintiff retains the ability to perform unskilled work. The ALJ also explained, that with respect to Dr. Caldwell's opinion, it was inconsistent with the moderate limitations found in her own mental status examination. The ALJ discussed plaintiff's activities of daily living, which contradicted Dr. Sennett's opinion. For example, in the treatment notes from Dr. Aziz, plaintiff is found to be "independent in her daily activities," "well oriented, fluent speech . . . comprehension and mentation intact[,] recent and remote memory intact[,] age appropriate fund of knowledge." (Tr. 594, 600, 595, 597). The notes state that she has "no difficulty with memory or speech" and "[n]o difficulty reading, writing, comprehension or expression," and is "[a]ttentive with normal concentration." (Tr. 598, 596, 601). The notes further indicate that she does volunteer work daily except for Sunday. (Tr. 600).

Finally, as noted by the Commissioner, the ALJ did factor in plaintiff's borderline intellectual functioning and learning disability into her RFC determination by limiting plaintiff to work that included simple routine and repetitive tasks that should be limited to one or two steps. The Court finds that this determination is supported by substantial evidence. The Court agrees with the ALJ that the significant limitations beyond those in the RFC determination imposed by Dr. Sennett and Dr. Caldwell are inconsistent with the remaining evidence in the record and substantial evidence supports the ALJ's decision to afford these opinions little weight.

---

[3] As pointed out by defendant, Dr. Sennett is plaintiff's primary care physician, and is not a mental health professional. The Court notes that in addition to this opinion regarding plaintiff's mental impairments, Dr. Sennett did also provide an opinion regarding plaintiff's physical impairments.

### 2. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. See 20 C.F.R. § 404.1529; see also *Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id*. § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve

symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. § 404.1529(c)(3). If the ALJ finds that plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008).

Plaintiff makes two arguments in support of her contention that the ALJ erred in her credibility determination. First, plaintiff argues that the ALJ did not consider the observations made by agency employee B. Goodhart at a September 27, 2012 interview that plaintiff had difficulty sitting, standing, and walking. The Court agrees with defendant that there is no requirement that the ALJ mention every piece of evidence in the record, and that she did not err by not specifically mentioning the brief observations of this employee during an interview initiating plaintiff's application for benefits. Moreover, as defendant points out, these observations that plaintiff "had difficulty with walking and sitting and standing [and] was cooperative during the interview" (Tr. 216) are consistent with the ALJ's RFC determination.

Plaintiff next argues that the ALJ erred by finding plaintiff less credible based on the fact that her allegations were inconsistent with Dr. Boucher's opinion. As discussed above, the Court concludes that the ALJ was permitted to rely on Dr. Boucher's opinion, and consequently, the ALJ was also permitted to observe that plaintiff's statements were inconsistent with this opinion. After reviewing the ALJ's decision, the Court concludes that she adequately addressed the regulatory factors, including plaintiff's activities of daily living, her subjective symptoms, and her treatment history when evaluating plaintiff's credibility, and that her decision is supported by

substantial evidence.

### 3. Step 5 Determination

Once the plaintiff shows that she cannot return to her previous work, the Commissioner bears the burden of establishing that she retains the RFC to perform alternative substantial gainful work in the national economy. *Butts v. Barnhart*, 388 F.3d 377, 383) (2d Cir. 2004). In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subt. P, App. 2. Each category has its own Grid which takes into account the claimant's age, education, and work experience. Based on these factors, the Grids indicate whether the plaintiff can engage in any other substantial gainful work which exists in the national economy.

Generally, the result listed in the Grid is dispositive on the issue of disability. However, an ALJ may not rely solely on the Grids when non-exertional limitations "significantly diminish" plaintiff's ability to work so that the Grids do not fully address plaintiff's limitations. *See, e.g.*, *Vargas v. Astrue*, 10 Civ. 6306, 2011 WL 2946371, at *13 (S.D.N.Y. July 20, 2011). Consequently, where the nonexertional limitations "significantly limit" the range of work permitted by the exertional limitations, or when exertional impairments do not fit squarely within grid categories, the ALJ is required to consult with a vocational expert. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairments has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and

instead must obtain the testimony of a vocational expert."). The ALJ's determination of whether the impact of the nonexertional limitations "significantly limits" the range of work must be supported by substantial evidence. *See Bapp*, 802 F.2d at 605.

Here, the ALJ did consult a vocational expert. Plaintiff argues, however, that the hypothetical given to the vocational expert was incomplete as a result of the alleged error in the RFC and credibility determinations. For the reasons discussed above, the Court finds that the ALJ did not err in these determinations, and therefore, the hypothetical posed to the vocational expert was complete, and supported by substantial evidence.

## CONCLUSION

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) is GRANTED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is DENIED; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment for the Commissioner.

IT IS SO ORDERED.

Date: July 29, 2016

Norman A. Mordue
Senior U.S. District Judge